UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE G.,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>　　　　　　　　　　Defendant. | Case No.:  18cv1323-DMS(MSB)<br><br>**REPORT AND RECOMMENDATION<br>REGARDING CROSS-MOTIONS FOR<br>SUMMARY JUDGMENT<br>[ECF NOS. 16, 17]** |

　　　　This Report and Recommendation is submitted to the Honorable Dana M. Sabraw, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.  On June 18, 2018, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits.  (Compl., ECF No. 1.)

　　　　Now pending before the Court are the parties' cross-motions for summary judgment.  For the reasons set forth below, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED**, and that Judgment be entered reversing the decision of

the Commissioner and remanding this matter for further administrative proceedings

pursuant to sentence four of 42 U.S.C. § 405(g).

## I. PROCEDURAL BACKGROUND

On February 19, 2016, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging disability beginning April 8, 2015. (Certified Admin. R., 230-31, ECF No. 13-5 ("AR").) After her application was denied initially and upon reconsideration, (id. at 152-56, 159-63), Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"), (id. at 169-70). An administrative hearing was held on September 7, 2017. (Id. at 35-78.)[1] Plaintiff appeared at the hearing with counsel, and testimony was taken from her and a vocational expert ("VE"). (Id.)

As reflected in his December 7, 2017 hearing decision, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from April 8, 2015 through the date of the decision. (Id. at 15-30.) The ALJ's decision became the final decision of the Commissioner on April 20, 2018, when the Appeals Council denied Plaintiff's request for review. (Id. at 1-6.) This timely civil action followed.

## II. SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. See 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 8, 2015, the alleged onset date. (AR at 17.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, bilateral carpal tunnel syndrome, a bilateral elbow impairment, depressive disorder and anxiety disorder. (Id.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of

---

[1] The Court notes that the Administrative Record in this case contains a duplicate copy of the hearing transcript. (See AR at 79-122; see also id. at 35-78.) This Report and Recommendation will reference the first copy of the transcript in the Administrative Record. (See id. at 35-78.)

impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (Id. at 24.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to do the following:

> perform light work as defined in 20 CFR 404.1567(b) except the claimant is limited to occasional bilateral gross handling, fine manipulation, and reaching, and the claimant is further limited to understanding, remembering, and carrying out simple, routine, repetitive tasks, with standard industry work breaks every two hours.

(Id. at 26.)

At step four, the ALJ adduced and accepted the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC would be unable to perform any of her past relevant work. (Id. at 29, 43-46.) The ALJ then proceeded to step five of the sequential evaluation process. Based on the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC could perform the requirements of occupations that existed in significant numbers in the national economy, such as furniture rental consultant, the ALJ found that Plaintiff was not disabled. (Id. at 30.)

### III.  DISPUTED ISSUES

As reflected in Plaintiff's motion for summary judgment, Plaintiff is raising the following issues as the grounds for reversal and remand:

1.     Whether the ALJ failed to properly evaluate the medical evidence in assessing Plaintiff's RFC, and specifically the opinions of Plaintiff's consultative examiners, Dr. Laja Ibraheem and Dr. H. Douglas Engelhorn (Pl.'s Mot. Summ. J. 3-9, ECF No. 16-1 ("Pl.'s Mot.")); and

2.     Whether the ALJ failed to resolve an apparent conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT") (id. at 9-10).

/ / /

/ / /

/ / /

18cv1323-DMS(MSB)

## IV.  STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision.  42 U.S.C. § 405(g) (West 2018). The scope of judicial review is limited, and the denial of benefits will not be disturbed if it is supported by substantial evidence in the record and contains no legal error.  Id.; Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012).

"Substantial evidence means more than a mere scintilla but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (quoting Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971).  Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).  This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.  See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001).  Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision.  See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).

## V.  DISCUSSION

### A.    The ALJ Failed to Properly Evaluate Opinions of Consultative Examiners

Plaintiff asserts that the ALJ did not provide specific and legitimate reasons for discounting the opinions of two consultative examiners.  (See Pl.'s Mot. at 3-9; Pl.'s Opp'n Def.'s Cross-Mot. Summ. J. and Reply 2-3, ECF No. 19-1 ("Pl.'s Reply").)  Plaintiff contends that the ALJ improperly concluded that both consultative examiners' opinions were internally inconsistent.  (Pl.'s Mot. at 6-8.)  Plaintiff further contends that the ALJ erred by assigning little weight to the opinion of Dr. Ibraheem, due to Dr. Ibraheem's partial reliance on Plaintiff's self-reported symptoms.  (Id. at 6-7.)

The Commissioner argues that the ALJ properly evaluated the medical opinion evidence. (Def.'s Cross-Mot. Summ. J. 4-8, ECF No. 17-1 ("Def.'s Mot.").) The Commissioner contends that the ALJ's finding that both consultative examiners' opinions were internally inconsistent justified discounting those opinions. (Id. at 5, 7.) The Commissioner further asserts that the ALJ's finding that Dr. Ibraheem relied on Plaintiff's reported symptoms rather than medical records justified the ALJ's assigning little weight to Dr. Ibraheem's opinion. (Id. at 5.)

### 1. Applicable law

Three types of physicians may offer opinions in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is generally given more weight than that of a physician who did not treat the claimant. See id.; 20 C.F.R. § 404.1527(c)(1). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Ryan v. Comm'r Soc. Sec., 528 F.3d 1194, 1197 (9th Cir. 2008) (citing Lester, 81 F.3d at 830).

Where the examining physician's opinion is uncontradicted by the opinion of a nonexamining physician, the Commissioner must provide clear and convincing reasons for rejecting the examining physician's opinion. Lester, 81 F.3d at 830 (citing Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Even if the examining physician's opinion is contradicted by a nonexamining physician, the examining physician's opinion may only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.[2] See Ryan, 528 F.3d at 1198; Lester, 81 F.3d at 830-31.

---

[2] The Court notes that the opinions of both examining physicians, Dr. Ibraheem and Dr. Engelhorn, were controverted by the opinion a nonexamining reviewing physician, Dr. Jacobs, whose opinion the ALJ assigned a great weight. (See AR at 133-34; see also id. at 27, 130.) Accordingly, the key issue is

1          **2.     Analysis**

2                 **a.     Dr. Ibraheem's opinion**

3          On May 6, 2016, Plaintiff underwent a Psychiatric Consultative Examination with

4    Dr. Ibraheem, a board-certified psychiatrist.  (AR at 20, 447-51.)  Dr. Ibraheem initially

5    noted that "[t]here are no medical records available for review at this time."  (Id. at

6    448.)  He then gathered a history of Plaintiff's present illness; work history; family,

7    social, and environmental history; medical history; past psychiatric history; current

8    medications; daily activities; conducted a mental status examination; proffered a

9    diagnosis; and provided a functional assessment.  (Id. at 447-51.)  Dr. Ibraheem

10   specifically stated in his report that he conducted a "complete psychiatric evaluation" of

11   Plaintiff during the examination.  (Id. at 447.)  Plaintiff reported that she suffered from

12   anxiety and depression, was forgetful, could not concentrate and sleep, and her

13   symptoms "began April 2015 and worsened January 2016 after she had surgery for an

14   ovarian tumor."  (Id.)  Plaintiff also reported panic attacks, migraines, loss of appetite

15   contributing to weight loss, compulsiveness, and obsessiveness.  (Id. at 447-48.)

16         Dr. Ibraheem stated that Plaintiff was seeing a psychiatrist; was prescribed

17   Cyclobenzaprine, Ropinirole, Atenolol, Naproxen, Hydrocodone, Sumatriptan, Vyvanse,

18   Alprazolam, Citalopram, and Temazepam; and reported that the medications were

19   helping.  (Id. at 448-49.)  Dr. Ibraheem also noted Plaintiff's daily activities and her

20   previous work history as an attorney.  (Id.)

21         After conducting Plaintiff's mental status evaluation, Dr. Ibraheem concluded that

22   Plaintiff's "mood was depressed" and "[a]ffect was tearful," and noted "psychomotor

23   retardation."  (Id.)  Plaintiff was "alert," able to "recall 1 out of 3 objects within 5

24

25

26   _____

27

28   whether the ALJ provided specific and legitimate reasons based on the substantial evidence in the
     record for not crediting the opinions of Dr. Ibraheem and Dr. Engelhorn.

minutes without help," and to perform Serial Seven and Serial Three tests.[3]  (Id. at 450.)

Dr. Ibraheem assessed Plaintiff's memory, concentration, insight and judgement as

"limited," and Plaintiff's thought processes and thought content as "distractible."  (Id. at

449.)

Dr. Ibraheem diagnosed Plaintiff with "Major Depression Recurrent,"

"Psychosocial Stressors: Moderate," and rated Plaintiff's Global Assessment of

Functioning ("GAF") score at 50.  (Id. at 450.)  After a functional assessment of Plaintiff,

Dr. Ibraheem found as "markedly limited" Plaintiff's ability to "understand, remember,

and carry out complex instructions"; "maintain concentration, attendance, and

persistence"; "perform activities within a schedule and maintain regular attendance";

"complete normal workday/workweek without interruption from psych based

symptoms"; and "respond appropriately to changes in a work setting."  (Id. at 450-51.)

He assessed as "moderately limited" Plaintiff's "ability to understand, remember, and

carry out simple instructions."  (Id. at 451.)  Dr. Ibraheem concluded that "[f]rom a

psychiatric standpoint, prognosis is guarded."  (Id.)

The ALJ stated the following regarding Dr. Ibraheem's opinion:

> The undersigned does not concur with Dr. Ibraheem as to his marked
> limitations because they are internally inconsistent with and not well
> supported by other matters in his evaluation.  As an example of this, the
> claimant was able to perform Serial 7s and Serial 3s, yet Dr. Ibraheem
> found that her concentration and persistence was *markedly* limited.
> Further, Dr. Ibraheem's opinion is based mainly on the claimant's reported
> symptoms, as he noted there were no medical records available for him to
> review.  His opined marked limitations are inconsistent with the record as a
> whole and when viewed longitudinally, which fails to establish more than
> mild to moderate limitations in her mental functions.  Accordingly, the
> undersigned assigns Dr. Ibraheem's opinion little weight.

---

[3] "Serial Sevens" and "Serial Threes" are tests used to assess a patient's concentration, during which a patient is asked to count backward from 100 by sevens or threes.  See Salmon v. Astrue, No. 10-CV-03636-LHK, 2012 WL 1029329, at *6 n.3 (N.D. Cal. Mar. 26, 2012).

18cv1323-DMS(MSB)

(Id. at 21.)

The ALJ discounted Dr. Ibraheem's opinion, in part, because it was based on Plaintiff's self-reported symptoms. (See id.) "A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted'." Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999). However, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinion regarding mental illness." Buck v. Berryhill, 869 F.3d 1040, 1050 (9th Cir. 2017). "Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry." Id. (citing Poulin v. Bowen, 817 F.2d 865, 873 (D.C. Cir. 1987) ("[U]nlike a broken arm, a mind cannot be x-rayed.")). Clinical interviews and mental status evaluations are therefore "'objective measures' that 'cannot be discounted as a 'self-report.'" Still v. Berryhill, 756 F. App'x 746, 746-47 (9th Cir. 2019) (citing Buck, 869 F.3d at 1049).

In this case, Dr. Ibraheem not only documented Plaintiff's reported symptoms, but also administered several tests, and made his own observations, findings, and diagnoses. (See AR 447-51.) Notably, Dr. Ibraheem emphasized in his report that he conducted a "complete psychiatric evaluation" of Plaintiff. (Id. at 447.) The Court therefore finds that the ALJ improperly discounted Dr. Ibraheem's opinion due to Dr. Ibraheem's partial reliance on Plaintiff's self-reported symptoms. See Buck, 869 F.3d at 1050; Still, 756 F. App'x at 746-47; see also Pilgreen v. Berryhill, 757 F. App'x 618, 619 (9th Cir. 2019) (finding that the ALJ improperly discounted the opinion of a consultative psychologist who examined plaintiff because the opinion was based on the plaintiff's subjective reports; noting that the physician conducted a "typical psychological evaluation. That it relied in part on [the claimant's] self-reports is not a valid reason for rejecting it.").

Further, in finding that Dr. Ibraheem's opinion (that Plaintiff's concentration and persistence were "markedly limited") was internally inconsistent with Dr. Ibraheem's findings, the ALJ only cited Plaintiff's ability to perform Serial Sevens and Serial Threes tests. (<u>See</u> AR at 21.) The ALJ, however, is required to review the entire record and view the opinion in the context of the entire diagnostic picture. See <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1205 (9th Cir. 2001). In addition to Serial Sevens and Serial Threes tests, Dr. Ibraheem administered other tests during his evaluation of Plaintiff. (<u>See</u> AR at 449-50.) The examination revealed that Plaintiff was able to recall one out of three objects after five minutes without help, and the presence of psychomotor retardation. (<u>Id.</u> at 450.) Dr. Ibraheem also found that Plaintiff was "distractible," her "mood was depressed," and "[a]ffect was tearful." (<u>Id.</u> at 449.) Additionally, Dr. Ibraheem assessed Plaintiff's GAF score at 50, (<u>id.</u> at 450), which indicates "[s]erious symptoms (e.g. suicidal ideation, severe obsessive rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job." <u>Diagnostic and Statistical Manual of Mental Disorders</u>, at 34 (4th ed.). The ALJ, nevertheless, isolated one test in concluding that Dr. Ibraheem's opinion was internally inconsistent. (AR at 21.) The ALJ is required to conduct a more comprehensive analysis of the medical opinion in order to discredit it, rather than cherry-pick evidence to characterize the entire opinion as inconsistent. <u>See</u> <u>Ghanim v. Colvin</u>, 763 F.3d 1154, 1164 (9th Cir. 2014) (concluding that ALJ improperly cherry-picked evidence from examining physician's opinion in determining that the opinion was inconsistent with the physician's "diagnoses and observation of impairment."); <u>see also</u> <u>Fanlo v. Berryhill</u>, Case No.: 17cv1617-LAB (BLM), 2018 WL 1536732, at *10 (S.D. Cal. Mar. 28, 2018) (stating that "[t]he ALJ is not permitted to 'cherry-pick' only the records that support her position"; citing <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."); <u>Switzer v. Heckler</u>, 742

F.2d 382, 385-86 (7th Cir. 1984) ("[T]he Secretary's attempt to use only the portions [of a report] favorable to her position, while ignoring other parts, is improper.")).

The ALJ also determined that Dr. Ibraheem's opinion regarding Plaintiff's marked limitations was inconsistent with the record as a whole, but offered no concrete examples of these alleged inconsistencies, other than citing the opinion of a reviewing nonexamining physician. (AR at 27.) The fact that Dr. Ibraheem's opinion was controverted by the opinion of a reviewing nonexamining physician was not a legally sufficient reason for rejecting Dr. Ibraheem's opinion; rather, it was determinative of the standard to be applied to the ALJ's proffered reasons for not crediting Dr. Ibraheem's opinion. See Lester, 81 F.3d at 830 (in the event of conflict in the medical opinion evidence, an ALJ still must provide legally sufficient reasons to reject a treating or examining physician's opinion); see also Still, 756 F. App'x at 747 ("The opinions of the doctors who merely reviewed part of the paper record, but who neither talked to nor laid eyes on [plaintiff], do not reflect the record as a whole, and thus do not provide substantial evidence to support the ALJ's decision."). Further, notes from Plaintiff's treating physicians, as well as findings of another examining physician, support Dr. Ibraheem's opinion regarding Plaintiff's marked limitations. See AR at 464 (containing March 30, 2016 note from Dr. Freeman that "[f]or months [Plaintiff] has had several symptoms such as . . . cognitive deficits, concentration difficulty"); id. at 503, 505 (containing May 10, 2016 note from Dr. Wilson that Plaintiff's anxiety is "affecting her memory and [she has] trouble [with] concentrat[ion]"); see also id. at 539-41 (containing May 31, 2016 findings of Dr. Engelhorn that Plaintiff has "severe mental health problems," cannot "perform complex and detailed work," is "under severe stress affecting her memory," has difficulties with concentration, and assessing Plaintiff's GAF score at 50). The ALJ's finding is therefore conclusory and does not set for the requisite specific and legitimate reasons that are supported by substantial evidence. See Ryan, 528 F.3d at 1198; Lester, 81 F.3d at 830-31; see also Belanger v. Berryhill, 685 F. App'x 596, 598 (9th Cir. 2017) (finding that an ALJ's bare assertion that a medical opinion was

inconsistent with the record as a whole was "boilerplate" and insufficient to discount an opinion that was otherwise entitled to controlling weight); Garrison v. Colvin, 759 F.3d 995, 1012-13 (9th Cir. 2014) (stating that ALJ may not criticize a medical opinion using boilerplate language without offering substantive explanations regarding the criticism).

For the reasons stated above, the Court finds that the ALJ failed to provide specific and legitimate reasons for discounting Dr. Ibraheem's opinion. See Pilgreen, 757 F. App'x at 619-20 (holding that ALJ erred in discrediting an examining physician's opinion based on partial reliance on the claimant's self-reported symptoms, as well as non-examining physician's disagreement with the examining physician's opinion); Moe v. Berryhill, 731 F. App'x 588, 591 (9th Cir. 2018) (finding that ALJ erred in concluding that an examining psychiatrist's opinion was primarily based on claimant's reported symptoms, where the psychiatrist also relied on clinical observations and tests, including a "full mental status examination" of the claimant).  The ALJ therefore failed to properly evaluate Dr. Ibraheem's opinion.

### b.    Dr. Engelhorn's opinion

On May 24, 2016, Plaintiff underwent another psychiatric evaluation with a board-certified psychiatrist, Dr. Engelhorn.  (AR at 21, 537-41.)  Dr. Engelhorn noted that there were no medical records for him to review prior to the examination.  (Id. at 537.)  During the examination, he observed that Plaintiff "present[ed] a rather complicated picture of a variety of medical problems."  (Id. at 537.)  Plaintiff reported that she was not working, in part, due to her "emotional health problems."  (Id. at 538.)  She discussed separation from her husband, and the "tremendous turmoil and stress associated with this separation and potential divorce."  (Id. at 537.)  Plaintiff also told Dr. Engelhorn that "she has struggled with recurrent episodes of depression since the summer of 2015," and "her periods of depression are, at times, very prolonged and almost steady."  (Id.)  Dr. Engelhorn stated that Plaintiff was prescribed Celexa, Restoril, Vyvanse, Requip, Xanax, Imitrex, Norco, Naproxen, Ternormin, and Flexeril.  (Id.)

After conducting a mental status examination, Dr. Engelhorn stated that Plaintiff "comes across as being a chronically depressed and sad person.  At times she is very emotional and tearful.  She is, at times, so emotional that she has some difficulty in organizing a clear and concise history."  (Id. at 539.)  Dr. Engelhorn further noted that "[e]ven though anxiety is a major complaint, [Plaintiff] did not come across as being particularly anxious.  She does come across as being perhaps somewhat fearful."  (Id.)  He also added that Plaintiff "appears to make an honest presentation."  (Id.)

Dr. Engelhorn stated that Plaintiff did not have any cognitive impairment, and her "[c]oncentration and attention were adequate as judged by accurate responses to serial sevens."  (Id.)  He further found that Plaintiff's insight and judgement were "somewhat impaired."  (Id.)

Dr. Engelhorn diagnosed Plaintiff with "[m]ajor depression, recurrent type (severe form)," "[a]nxiety disorder," and a "[p]artner relational problem," and assessed Plaintiff's GAF score at 50.  (Id. at 539-40.)  Additionally, Dr. Engelhorn also wrote the following in his report:

> I doubt that this patient is currently employable.  She is extremely emotionally unstable and rather chronically depressed and suffers from rather severe anxiety and fearfulness.  I did not feel she could currently perform complex and detailed work.  As judged by her presentation today, she would have difficulty relating to peers and supervisors in the workplace.  She would have major problems in dealing with routine adjustments in the workplace.  She rarely leaves her home because she is rather fearful and emotionally distressed.  This is a patient who has . . . severe mental health problems[.]

(Id. at 540-41.)

The ALJ assigned little weight to Dr. Engelhorn's opinion reasoning as follows:

> The undersigned does not concur with Dr. Engelhorn's opinions, as they are internally insistent with and not well supported by the other matters in his consultation.  As an example of this, he found that the claimant had severe anxiety, yet he reported, "she did not come across as being particularly

anxious" (Exhibit 5F, page 3). Accordingly, the undersigned gives this opinion little weight.

(Id. at 21.)[4]

Dr. Engelhorn stated in his May 24, 2016 opinion that Plaintiff reported anxiety as her major complaint. (Id. at 539.) He diagnosed Plaintiff with "anxiety." (Id.) This diagnosis was supported by Dr. Engelhorn's findings during the consultation, (see id. at 539-40), and is consistent with Plaintiff's medical records, (see AR at 343, 345 (containing March 11, 2015 pre-operation consultation notes from Dr. Polanco listing a diagnosis of "[a]nxiety with secondary insomnia"); id. at 359 (containing June 9, 2015 notes from Dr. Yiphantides, diagnosing "anxiety," and advising Plaintiff to follow up with her primary care physician or psychiatrist to help manage her anxiety symptoms); id. at 367-69 (containing September 18, 2015 notes from Dr. Polanco diagnosing "anxiety," stating that Plaintiff received counseling during the appointment and was prescribed Citalopram for anxiety); id. at 373 (containing November 11, 2015 notes from Dr. Born, listing "anxiety" diagnosis and prescribing Valium in response to complaints of "severe anxiety"); id. at 481, 484 (containing April 8, 2016 notes from Dr. Wilson describing Plaintiff's psychiatric condition as "[l]ots of anxiety"); id. at 503, 505 (containing May 10, 2016 notes from Dr. Wilson listing "anxiety" diagnosis); id. at 544 (containing July 6, 2016 notes from Dr. Wilson stating that Plaintiff complained of anxiety and panic attacks). Notably, the ALJ also stated in his written opinion that "throughout the record, the claimant's treating physicians and psychiatrist noted the claimant's anxious and

_____

[4] The ALJ also discounted Dr. Ibraheem's and Dr. Engelhorn's opinions because their consultations occurred in May 2016, reasoning that "[b]oth consultations in such close proximity are insufficient in the context of the record as a whole to establish ongoing limitations longitudinally over a 12-months period that are more restrictive than found above." (AR at 21.) The Court notes that both consultations were conducted at the request of the state agency (id. at 447, 537), and both physicians conducted psychiatric evaluations of Plaintiff, (see id. at 447-51, 537-41). Notably, both opinions were consistent in finding that Plaintiff had marked limitations. (See id.) Accordingly, the proximity in time between both consultations does not constitute a specific and legitimate reason for discounting Dr. Ibraheem's and Dr. Engelhorn's opinions.

18cv1323-DMS(MSB)

depressed mood" and found that Plaintiff's "depression and <u>anxiety</u> are <u>severe</u> <u>impairments, which is supported by the medical record as a whole</u> and claimant's complaints of depression, <u>anxiety</u>, and panic attacks to her treating physicians." (<u>Id.</u> at 28 (emphasis added).)

An ALJ is required to consider the entire record and view an examining physician's opinion in light of the entire diagnostic picture. <u>See</u> <u>Holohan</u>, 246 F.3d at 1205. Moreover, an ALJ may not cherry-pick the evidence in an examining physician's opinion without also considering the broader context of the doctor's observations and overall diagnosis. <u>See</u> <u>Ghanim</u>, 763 F.3d at 1164; <u>see also</u> <u>Robinson</u>, 366 F.3d at 1083; <u>Switzer</u>, 742 F.2d at 385-86. The Court finds that the ALJ did not provide specific and legitimate reasons for discounting Dr. Engelhorn's opinion. <u>See</u> <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1465 (9th Cir. 1996) ("Where the purported existence of an inconsistency is squarely contradicted by the record, it may not serve as the basis for the rejection of an examining physician's conclusions."); <u>see also</u> <u>Quiambao v. Berryhill</u>, No. 17-CV-02305-BAS-RBB, 2018 WL 3584462, at *11 (S.D. Cal. July 26, 2018) (finding that ALJ improperly cherry-picked evidence from the record to characterize a medical opinion as inconsistent); <u>Henderson v. Berryhill</u>, Case No. EDCV 16-1995 AJW, 2017 WL 3399998, at *3 (C.D. Cal. Aug. 8, 2017) (finding that ALJ erred by overstating an internal inconsistency). The ALJ therefore did not properly evaluate the opinion of Dr. Engelhorn.

**B.** **The ALJ Failed to Resolve an Apparent Conflict Between the Vocational Expert Testimony and the DOT**

Plaintiff contends that the ALJ failed to resolve an apparent conflict between the VE testimony and the DOT. (Pl.'s Mot. at 9-10; Pl.'s Reply at 3-5.) Plaintiff argues that according to the DOT, the duties of a furniture rental consultant require Level 3 Reasoning, and that requirement conflicts with her RFC limitation to simple or repetitive tasks. (Pl.'s Mot. at 10.) Plaintiff also contends that a job of a furniture rental consultant involves Level 3 Reasoning duties that are "essential, integral, or obvious."

(Pl.'s Reply at 4.)  Plaintiff further asserts that the ALJ's acceptance of the VE's deviation from the DOT without an explanation from the VE regarding the basis for the deviation constitutes reversible error because "the record is clear that [Plaintiff's] mental health history did not allow her to function at the level she used to function at."  (Pl.'s Reply at 5; see also Pl.'s Mot. at 10.)

The Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff could perform work existing in significant numbers.  (Def.'s Mot. at 8-10.)  The Commissioner contends that the DOT's description of a furniture rental consultant's duties "shows that a level of reasoning beyond the ability to perform simple, routine, and repetitive tasks is not essential, integral, or obvious part of the occupation," and thus, there was no apparent conflict between the VE testimony the DOT.  (See id. at 9).  The Commissioner also alleges that even if a conflict existed, the ALJ's failure to inquire into the conflict constituted harmless error in light of the record as a whole.  (Id. at 9-10.)

### 1.    Applicable law

At step five of the sequential evaluation process, "the Commissioner has the burden 'to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations.'"  Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)); see also 20 C.F.R. § 416.920(g).  In determining if other suitable work exists that the claimant may be able to perform, the ALJ is to primarily rely on the DOT, and may also rely on the testimony of vocational experts who testify about specific occupations that a claimant can perform in light of his or her RFC.  See Zavalin, 778 F.3d at 845-46; Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009).

An ALJ may not "rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the [DOT]."  Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007); see also Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 (Dec. 4, 2000).  Pursuant to SSR 00-4p,

18cv1323-DMS(MSB)

the ALJ has an affirmative duty to inquire into the existence of potential conflicts between the VE's testimony and the DOT, and obtain an explanation from the VE regarding any conflicts that do exist.  See SSR 00-4p, 2000 WL 1898704; Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1003 (9th Cir. 2015); Massachi, 486 F.3d at 1152-53.  If there is conflict between the VE's testimony and the DOT, "the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT." Massachi, 486 F.3d at 1153.  Failure to conduct such inquiry is analyzed under the harmless error standard.  See Zavalin, 778 F.3d at 848; see also Massachi, 486 F.3d at 1154 n.19 (stating that the error is harmless where "there [is] no conflict, or if the vocational expert ha[s] provided sufficient support for her conclusion so as to justify any potential conflicts.").

### 2.    Analysis

The ALJ found that Plaintiff has the RFC to "understand[], remember[], and carry[] out simple, routine, repetitive tasks, with standard industry work breaks every two hours."  (AR at 26.)  The VE categorized Plaintiff's past relevant work as follows: "Lawyer, (sedentary, [actually performed at heavy by the claimant], skilled, with an SVP of 8), as found in Dictionary of Occupational Titles (DOT) at code 110.107-010."  (Id. at 29.)  The ALJ found that, "[b]ased on the claimant's testimony, the record as a whole, and the vocational expert testimony, . . . with the residual functional capacity discussed above, the claimant is unable to perform past relevant work as actually or generally performed."  (Id.)

During the administrative hearing, the ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and work experience, who is limited to "understanding, remembering, and carrying out simple, routine, repetitive tasks."  (Id. at 47.)  The VE testified that such an individual could perform the work of a furniture rental consultant, DOT 295.357-018.  (Id.)  Relying on the VE's testimony regarding the availability of work in significant numbers that accorded with Plaintiff's RFC, the ALJ

determined that Plaintiff would be able to perform the duties of a furniture rental consultant (DOT 295.357-018).  (Id. at 30.)  The ALJ stated in his written opinion that he had "determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles."  (Id.)

The DOT provides that the job of a furniture rental consultant (295.357-018) requires Level 3 Reasoning, which the DOT defines as ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations."  DOT 295.357-018, 1991 WL 672589.  The Ninth Circuit has specifically held that there is an apparent conflict between a claimant's RFC to perform "simple, repetitive tasks" and the demands of Level 3 Reasoning.  See Zavalin, 778 F.3d at 847 (holding that "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning"); see also Lewis v. Berryhill, 708 F. App'x 919, 920 (9th Cir. 2018) ("We have held that an apparent conflict exists between a limitation to 'simple, routine, or repetitive tasks' and 'the demands of Level 3 Reasoning.'").  Accordingly, the Court finds that in this case, there was an apparent conflict between Plaintiff's RFC to perform "simple, routine, repetitive tasks" and Level 3 Reasoning requirement of the job of a furniture rental consultant.[5]  See id.

---

[5]  The Commissioner argues that "a level of reasoning beyond the ability to perform simple, routine, and repetitive tasks is not essential, integral or obvious part of the [furniture rental consultant] occupation."  (Def.'s Mot. at 9 (citing Gutierrez v. Colvin, 844 F.3d 804, 808 (9th Cir. 2016).)  In Gutierrez, the court concluded that plaintiff's overhead reaching limitation was not obviously implicated in the duties of a cashier because a typical cashier "never has to [reach overhead]." Gutierrez, 844 F.3d at 809.  The Court has reviewed the DOT's lengthy description of the furniture rental consultant's duties and concludes that in this case, unlike in Gutierrez, common experience is not so easily applied to conclude that the position "obviously or essentially" does not involve Level 3 Reasoning.  See Lamear v. Berryhill, 865 F.3d 1201, 1205 (9th Cir. 2017) ("To avoid unnecessary appeals, the ALJ should ordinarily ask the VE to explain in some detail why there is no conflict between the DOT and the applicant's RFC.").  The Court therefore finds the Commissioner's arguments unavailing.

In light of the apparent conflict, the ALJ was required to ask the VE to explain why a person with Plaintiff's limitation could nevertheless meet the demands of Level 3 Reasoning.  See SSR 00-4p, at *2, 2000 WL 1898704 (requiring the ALJ to "elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether [the claimant] was disabled."); Zavalin, 778 F.3d at 843-44 (holding that because "an apparent conflict [existed] between [plaintiff's] limitation to simple, routine, or repetitive tasks, on the one hand, and the demands of Level 3 Reasoning, on the other hand," the ALJ was required to reconcile the conflict); see also Lewis, 708 F. App'x at 920 (concluding that in light of the conflict, the ALJ was required to "elicit a reasonable explanation for the conflict before relying on the [VE] evidence to support a determination or decision about whether [the claimant] is disabled.").  The Court has reviewed the administrative hearing transcript and notes that at the beginning of the VE's testimony, the ALJ asked the VE the following: "If your testimony is inconsistent with the DOT will you tell me whether or not I ask?"  (AR at 43.)  The VE replied that he would.  (Id.)  The ALJ subsequently asked the VE if an individual "limited to understanding, remembering, and carrying out simple, routine, repetitive tasks" could still perform work as a furniture rental consultant, and the VE replied, "Yes, that's correct."  (Id. at 47.)  This exchange was the only inquiry the ALJ made into any conflict between the VE's testimony and the requirements of the furniture rental consultant position, as defined in the DOT.  Because the ALJ failed to recognize a conflict, (see id. at 30), he did not ask the VE to explain why a person with Plaintiff's limitation could nevertheless meet the demands of Level 3 Reasoning.  The ALJ therefore erred when he did not reconcile this apparent conflict.  See Lewis, 708 F. App'x at 920 (quoting SSR 00-4p, 2000 WL 1898704, at *2) (finding that the ALJ erred when he failed to "elicit a reasonable explanation for the conflict before relying on the

[VE] evidence to support a determination or decision about whether [claimant] is disabled.").

The Commissioner contends that the ALJ's alleged failure to inquire into the conflict constituted harmless error in light of Plaintiff's educational and work background, as well as her "cognitive ability to perform unskilled work." (See Def.'s Mot. at 9-10.) "[A]n ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" Molina, 674 F.3d at 1115 (quotation omitted); see also Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (finding that an ALJ's error that produced a favorable result for the claimant was harmless).

As an initial matter, "there is no rigid correlation between reasoning levels and the amount of education that a claimant has completed." Zavalin, 778 F.3d at 847. "While [the claimant's] educational background is relevant, the DOT's reasoning levels clearly correspond to the claimant's *ability* because they assess whether a person can 'apply' increasingly difficult principles of rational thought and 'deal' with increasingly complicated problems." Id. Although Plaintiff is highly educated, (AR at 282), and worked in the past as an attorney, (id. at 291), Plaintiff's RFC, as well as Plaintiff's medical records discussed in detail above, indicate that she has diminished capacity to carry out mentally demanding tasks. (Id. at 26); see also Zavalin, 778 F.3d at 845, 848 (finding that plaintiff's previous success in mathematics did not automatically demonstrate his ability to perform work demanding Level 3 Reasoning after being limited to simple, routine, repetitive tasks). Notably, during the administrative hearing in this case, the VE testified that a hypothetical individual limited to understanding, remembering, and carrying out simple, routine, repetitive tasks would be precluded from performing Plaintiff's past work; and the ALJ ultimately found that Plaintiff was precluded from her past relevant work as an attorney, despite her education and prior work experience as an attorney. (AR at 44.)

/ / /

/ / /

Further, the DOT describes the furniture rental consultant's position as follows:

Rents furniture and accessories to customers: Talks to customer to determine furniture preferences and requirements. Guides or accompanies customer through showroom, answers questions, and advises customer on compatibility of various styles and colors of furniture items. Compiles list of customer-selected items. Computes rental fee, explains rental terms, and presents list to customer for approval. Prepares order form and lease agreement, explains terms of lease to customer, and obtains customer signature. Obtains credit information from customer. Forwards forms to credit office for verification of customer credit status and approval of order. Collects initial payment from customer. Contacts customers to encourage followup transactions. May visit commercial customer site to solicit rental contracts, or review floor plans of new construction and suggest suitable furnishings. May sell furniture or accessories.

DOT 295.357-018, 1991 WL 672589.

The DOT's description of the furniture rental consultant position requires performing tasks that involve "several concrete variables in or from standardized situations" that are characteristic of Level 3 Reasoning. See DOT, App. C, 1991 WL 688702. Plaintiff, however, is limited to simple, routine, repetitive tasks, which are more characteristic of Level 2 Reasoning, which requires an ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions[,]" and "[d]eal with problems involving a <u>few</u> concrete variables in or from standardized situations." See id. (emphasis added); see also Zavalin, 778 F.3d at 847 (noting that the claimant's "limitation to simple, routine tasks is at odds with Level 3's requirements because 'it may be difficult for a person limited to simple, repetitive tasks to follow instructions in 'diagrammatic form' as such instructions can be abstract.'"); Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (noting that Level 2 Reasoning "appears more consistent" with a claimant's RFC limited to simple, routine tasks than Level 3 Reasoning); Adams v. Astrue, No. C 10–2008 DMR, 2011 WL 1833015, at *4 (N.D. Cal. May 13, 2011) ("The ability to deal with problems involving multiple variables may

be inconsistent with a limitation to 'simple, repetitive tasks' because the multiplicity of the variables can complicate the simplicity of the tasks.").

The ALJ's decision in this case does not include any explanation for his conclusion that Plaintiff could perform a job that appears to be beyond the RFC that the ALJ assessed for Plaintiff.  Based on the record before it, the Court therefore cannot determine whether substantial evidence supports the ALJ's finding that Plaintiff could perform the work of the furniture rental consultant.  The ALJ's failure to inquire into the existence of any conflict between the VE's testimony and the DOT is therefore not harmless error.  See Zavalin, 778 F.3d at 848 (citing Massachi, 486 F.3d at 1154) (concluding that the ALJ's failure to reconcile the apparent conflict between VE testimony and the DOT was not harmless error, where the court was unable to determine from "mixed record" whether substantial evidence supported ALJ's step-five finding that plaintiff could perform other work identified by the VE).

For the reasons stated above, the Court finds that an apparent conflict existed between the VE's testimony and the requirements of the DOT, and the ALJ had a duty to resolve the conflict.  See Zavalin, 778 F.3d at 847.  The Court further finds that the ALJ's failure to identify and reconcile the apparent conflict is not harmless error.  See id. at 848; Massachi, 486 F.3d at 1154.

## VI.  CONCLUSION AND RECOMMENDATION

The reviewing court may enter a "judgment affirming, modifying, or reversing" the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand the case to the Social Security Administration for further proceedings.  Id.  The reviewing court has discretion in determining whether to remand for further proceedings or award benefits is within the discretion of the Court.  See Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  Remand for further proceedings is warranted where additional administrative proceedings could remedy defects in the decision.  See Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  Remand for the payment of benefits is appropriate where no useful purpose would be

served by further administrative proceedings, where the record has been fully developed, or where remand would unnecessarily delay the receipt of benefits to which the disabled plaintiff is entitled.  See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985); Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980).

Here, Plaintiff contends that the Court "should reverse and award benefits" or, in the alternative, "reverse and remand for further proceedings," (see Pl.'s Mot. at 10-11; see also Pl.'s Reply at 5), and the Commissioner maintains that the appropriate remedy in the event of reversal would be a remand for further administrative proceedings, (see Def.'s Mot. at 11).  The Court has concluded that remand for further proceedings is warranted because additional administrative proceedings could remedy the defects in the ALJ's decision.

For the foregoing reasons, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED,** and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS ORDERED** that no later than **August 7, 2019**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

18cv1323-DMS(MSB)

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **August 14, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: July 23, 2019

Honorable Michael S. Berg
United States Magistrate Judge

18cv1323-DMS(MSB)